*Fed claim Alvarez original copy*

*1 of 12*

# United States District Court Southern District of Florida

Brandon Waterman, Pro Se,
11818 41st Ct N
West Palm Beach FL 33411,
(561) 932-2822
Brandonwaterman54@gmail.com
Plaintiff

FILED BY ___PCS___ D.C.

JAN 17 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

V.

Detective Lisa Alvarez PBSO Officer
Badge Number #25506 of Palm Beach County Sheriff's Office
3228 Gun Club Road
West Palm Beach, FL 33406,
Defendant
**Case No.: [To Be Assigned]**

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, NEGLIGENCE, AND OTHER FEDERAL AND STATE CLAIMS

## I. Introduction

1. This is a civil rights action brought by Plaintiff Brandon Waterman against Detective Lisa Alvarez ("Defendant"), PBSO for the Florida Department of Children and Families (DCF). Plaintiff alleges violations of his constitutional rights protected under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, actionable under 42 U.S.C. § 1983.

2. Defendant Alvarez, in signing off on the probable cause affidavit leading to Plaintiff's arrest on 7/19/23 and through her actions and inactions during the investigation beginning on 1/7/23, acted negligently, failed to independently verify claims, and engaged in intimidation and coercion tactics against Plaintiff's paramour, Samantha Warner ("Samantha"). Defendant's reliance on uncorroborated and false information provided by other officers (Agents Merkle and Holst), her failure to conduct an adequate investigation, and her participation in coercion caused harm to Plaintiff and violated state and federal laws.

## II. Jurisdiction and Venue

3. Jurisdiction is conferred on this Court under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction).

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Wellington, Florida (Palm Beach County), which is within the Southern District of Florida.

## III. Parties

5. Plaintiff: Brandon [Full Last Name], a resident of Wellington, Florida, whose rights were violated by Defendant's misconduct.

6. Defendant: Detective Lisa Alvarez, Badge No. 25506, who at all relevant times acted under color of law in her capacity as a child protective investigator for DCF.

## IV. Factual Allegations

7. Overview of the Initial Investigation on 1/7/23: On 1/7/23, at 3:30 AM, DCF investigators and law enforcement conducted a wellness check at Plaintiff's residence following allegations made in an anonymous report (later linked to Plaintiff's ex-girlfriend). The accusations included the manufacture of psilocybin mushrooms and environmental hazards to children. The Plaintiff's girlfriend created this DCF report to gain the upper hand in the custody of the child in common with the plaintiff. The plaintiff's active pursuit of starting a legal mushroom business was weaponized against him by his ex-girlfriend within the DCF allegations as it was insinuated that he was manufacturing psilocybin mushrooms and other psychedelics in the presence of children.

8. During the investigation, law enforcement officers, including Agents Merkle and Holst, seized legal mycology supplies and legal oyster mushrooms, which they claimed yielded a positive result with a  psilocybin field test. Subsequent lab testing on 1/18/23 confirmed there was no psilocybin present in any of the items seized. However, this information was withheld from DCF.

9. Plaintiff's rebuttal to the allegations, including a 32-page document submitted to DCF and Defendant Alvarez (among many other individuals) which demonstrated the falsity of the claims and inconsistencies in the reports written by Agents Merkle and Holst. Despite this clearly documented proof of the contradictions regarding specifically the nature of the substances confiscated and the location that items were stored, Defendant Alvarez failed to investigate or give proper consideration to the evidence provided by Plaintiff.



## V. Delay of Arrest, Traumatic Execution of Warrant Lack of New Evidence

10. The delay in arresting Brandon Waterman for child neglect, coupled with the manner in which the arrest was executed, raises significant constitutional concerns under federal law. Below is a detailed breakdown of how these actions violated Waterman's rights and caused unnecessary trauma, forming the basis for a federal claim against Detective Lisa Alvarez under 42 U.S.C. § 1983.

### a. Violation of Fourth and Fourteenth Amendments

11. The arrest for child neglect occurred on July 19, 2023, over six months after the initial investigation on January 7, 2023, and two months after the probable cause affidavit was signed on May 24, 2023.

12. No new evidence or findings were presented during this time to justify such a significant delay. The absence of new developments undermines the urgency and credibility of the charges.

### b. Constitutional violations include:

13. Fourth Amendment: The delay in executing the arrest warrant raises questions about whether the probable cause was stale. Probable cause must be based on timely and reliable evidence; any significant gap between the alleged offense and the arrest risks violating protections against unreasonable seizures.

14. Fourteenth Amendment (Due Process): The prolonged delay without justification deprived Waterman of procedural fairness. Arbitrary delays can result in prejudice, such as diminished ability to gather evidence or prepare a defense.

15. The delay suggests a lack of urgency or credible danger to the children, contradicting the narrative that Waterman's environment posed an immediate threat.

16. This inconsistency undermines Alvarez's justification for signing off on the probable cause affidavit and contributes to claims of malicious prosecution or abuse of process.

## VI. Traumatic Execution of Arrest Warrant

### c. Excessive Force and Emotional Distress

17. On July 19, 2023, officers executed a search warrant at Waterman's new residence by breaching the door after he did not answer. They entered with rifles aimed at his

paramour's young children (ages 3 and 5), who were present while their mother was at work.

18. This militarized approach caused unnecessary trauma to the children and emotional distress to Waterman's family. The use of force was disproportionate given:The nonviolent nature of the charges (child neglect).

19. The arrest resulted in an additional charge of resisting arrest without violence, despite no evidence suggesting that Waterman posed a physical threat during this incident.

### d.  Violation of Fourth Amendment

20. The Fourth Amendment prohibits excessive force during searches and seizures. Courts evaluate excessive force claims based on whether the level of force was objectively reasonable under the circumstances.

20. In this case:Deploying at least ten officers with rifles for a nonviolent charge was excessive.

### e.  Violation of Fourteenth Amendment

21. The traumatic impact on the children may constitute a violation of their substantive due process rights under the Fourteenth Amendment. Courts have recognized that unnecessarily traumatizing children during law enforcement actions can violate their constitutional rights.

## VII. Lack of Justification for Urgency

### f.  Contradictory Actions

22. Despite treating the arrest as if it were an urgent matter requiring a heavily armed response, Waterman was released on bond for just $100 the following day. This low bond amount contradicts any claim that he posed an imminent danger to society or his family.

23. The urgency placed on executing this warrant appears inconsistent with the six-month delay in pursuing charges, further highlighting procedural irregularities.

24. Alvarez's role in approving or facilitating this approach demonstrates negligence or deliberate indifference to its traumatic impact on innocent parties (the children) and its disproportionality to the charges.

25. This conduct supports claims that Alvarez violated federal standards for reasonable law enforcement practices.

### g. Fourth Amendment: Unreasonable Seizure

26. The delay in execution of the warrant without new evidence raises questions about whether probable cause remained valid at the time of arrest.

27. The militarized execution of the warrant constitutes excessive force disproportionate to the charges.

### h. Fourteenth Amendment: Due Process Violations

28. Arbitrary delays in criminal proceedings deprived Waterman of procedural fairness, causing undue emotional distress and reputational harm.

29. The traumatic impact on his paramour's children during execution violated their substantive due process rights by subjecting them to unnecessary harm.

### i. Malicious Prosecution

30. Alvarez's reliance on stale evidence and misrepresentations in her probable cause affidavit could support claims that she acted with malice or reckless disregard for Waterman's rights.

## VII. Legal Precedents Supporting Federal Claims

31. **Excessive Force**: In *Graham v. Connor* (490 U.S. 386, 1989), the Supreme Court held that law enforcement's use of force must be objectively reasonable based on circumstances.Deploying rifles in front of young children for nonviolent charges likely fails this test.

32. **Due Process**: In *County of Sacramento v. Lewis* (523 U.S. 833, 1998), substantive due process protects individuals from egregious government conduct that "shocks the conscience."Traumatizing young children during an unnecessarily aggressive raid could meet this standard.

**33. Malicious Prosecution:** In *Albright v. Oliver* (510 U.S. 266, 1994), malicious prosecution claims require showing that criminal proceedings were initiated without probable cause and with malice.Alvarez's reliance on misrepresented evidence and unjustified delays strengthens this argument.

**34. Lisa Alvarez's role in delaying Brandon Waterman's arrest without justification, combined with her approval (or complicity) in executing an unnecessarily aggressive warrant raid, demonstrates clear violations of constitutional rights under both the Fourth and Fourteenth Amendments.** These actions caused undue harm to Waterman, his paramour's young children, and their family unit while undermining public trust in law enforcement practices.

## VIII. Irrelevance of the Firearm to Child Neglect Charge

**35.** The discovery of a firearm during the investigation into Brandon Waterman is irrelevant to the child neglect charges for several reasons. The circumstances surrounding its discovery, its location, and the lack of any connection to child endangerment undermine its use as probable cause for the arrest. Additionally, the manner in which the firearm was obtained raises significant legal and procedural concerns.

### j.  Location of the Firearm and Lack of Danger to Children

**36.** The firearm was located in a high closet on a top shelf over six feet above ground, making it inaccessible to children aged 3 and 5. Its placement eliminates any immediate or foreseeable risk to the children's safety.

**37.** There is no evidence that the children had knowledge of or access to the firearm. Without such evidence, its mere presence in the home cannot be linked to child neglect under Florida Statute §827.03.

**38.** The police report and probable cause affidavit fail to establish how this firearm endangered the children or contributed to an unsafe environment.

### k.  Irrelevance to Child Neglect Charges

**38.** Child Neglect Defined: Under Florida law, child neglect requires proof that a caregiver knowingly exposed a child to harm or danger that could reasonably result in physical or mental injury. The presence of a firearm, legally or illegally possessed, does not inherently meet this standard unless it can be shown that children were directly endangered by it.

39. In this case:The firearm was stored in a location inaccessible to children.

## l.   Coerced Consent and Illegal Search

40. The firearm was discovered during a warrantless search conducted without proper consent until four hours into the search. Consent was obtained under duress, as law enforcement allegedly threatened Waterman and his paramour with consequences (e.g., removal of children) if they did not comply.

41. The search extended for six hours and included personal spaces (drawers, closets) unrelated to the stated purpose of ensuring child safety. This overreach violated Fourth Amendment protections against unreasonable searches and seizures.

42. Without exigent circumstances (e.g., immediate danger to children), law enforcement had no legal basis to search areas like a high closet shelf where no immediate threat could exist.

## m.  Use of Firearm as Probable Cause for Arrest

43. Despite its irrelevance to child safety, the firearm was used as the sole basis for probable cause in Waterman's arrest for child neglect. This is an inappropriate application of the law because:The discovery of the firearm does not demonstrate neglect or endangerment under §827.03.

## n.  Delay in Arrest Undermines Credibility

44. If law enforcement genuinely believed that the presence of the firearm posed an imminent danger to children, they would have acted immediately upon its discovery on January 7, 2023. Instead:The arrest did not occur until July 19, 2023—

45. The delayed arrest further highlights how law enforcement misused the discovery of the firearm as an afterthought rather than addressing any legitimate concern for child welfare.

## o.  Misuse of Law and Procedural Violations

46. **Misapplication of Child Neglect Statute:**By using the presence of a firearm as probable cause for child neglect charges, law enforcement stretched the statute beyond its intended purpose.

47. Florida Statute §827.03 focuses on protecting children from actual harm or imminent danger—not speculative risks based on unrelated factors like Waterman's felony status.

### p. Procedural Overreach

48. Law enforcement exceeded their authority by conducting an overextended search under coerced consent, violating Fourth Amendment protections.

49. Their actions demonstrate a misuse of power aimed at building a case against Waterman rather than addressing immediate concerns about child safety.

### q. Broader Implications

50. The inclusion of the firearm as evidence for child neglect reflects a pattern of overreach and misrepresentation:

51. It diverts attention from legitimate concerns about child welfare by focusing on unrelated issues (e.g., Waterman's past felony conviction).

52. It undermines public trust in law enforcement by appearing punitive rather than protective.

53. This misuse of evidence could form part of a federal claim under 42 U.S.C. §1983, alleging violations of constitutional rights:

54. **Fourth Amendment:** Unreasonable search and seizure due to coerced consent and lack of exigent circumstances.

55. **Fourteenth Amendment:** Due process violations stemming from arbitrary delays and misuse of irrelevant evidence.

56. The discovery of a firearm during an illegal search is irrelevant to allegations of child neglect because it does not meet statutory requirements for endangerment under Florida law. Its location—on a high shelf inaccessible to children—further negates any claim that it posed a direct threat. Law enforcement's reliance on this evidence reflects procedural overreach, misapplication of statutes, and potential constitutional violations, all of which undermine the legitimacy of Waterman's arrest and charges.

57. This claim highlights systemic failures by law enforcement and underscores Alvarez's accountability for her role in these constitutional violations.

**r.   Misrepresentation of Chemistry Reports**

58. The probable cause affidavit relied heavily on flawed interpretations of laboratory findings to justify both the original child neglect charges and subsequent law enforcement actions:

**a. Alleged DMT Discovery:** The chemistry report stated that a brown liquid substance found in a glass bottle in the garage was "tentatively identified" as DMT using Gas Chromatography-Mass Spectrometry (GC-MS). However:

1. The report explicitly noted that "confirmatory testing has not been performed on tentatively identified drugs," meaning there was no definitive proof that the liquid contained DMT.
2. The gross weight of 712 grams included the weight of the bottle itself, inflating the perceived quantity and misrepresenting its significance.
3. No purity analysis or specific concentration of DMT was provided, yet law enforcement exaggerated its presence as if it were a confirmed and highly potent substance.

**b. Mushroom Material Testing:** Field tests allegedly indicated psilocybin in confiscated mushrooms; however:

1. Laboratory analysis later confirmed that no controlled substances were detected in any tested samples.
2. Claims that there was "not enough material" to test contradict the documented confiscation of 513 grams of mushroom material—an amount sufficient for confirmatory testing.
3. Despite these findings, law enforcement continued to allege that Waterman was manufacturing psilocybin mushrooms, creating a false narrative unsupported by scientific evidence.

**c. Mischaracterization of Legal Mycology Materials:** Materials used for cultivating oyster mushrooms—legal and non-toxic—were misrepresented as "dangerous chemicals" or "toxins." These items pose no health risks and are commonly used in legal mycology practices.

**d.** Law enforcement conflated legal mushroom cultivation with illegal drug manufacturing without any evidence to support this claim.

**s. Systemic Failures in Judicial Oversight**

**59.** The search warrant executed on July 19, 2023, was approved despite glaring inconsistencies in the evidence presented in prior reports. Judges failed to critically evaluate whether probable cause still existed months after laboratory results had exonerated Waterman on key allegations.

60. The issuance of this warrant so long after the investigation concluded suggests systemic bias or negligence within both law enforcement and judicial processes.

### t. Harm Caused by Misrepresented Evidence

61. The reliance on flawed chemistry reports and exaggerated claims caused significant harm:

> a. Emotional Trauma: The militarized raid caused unnecessary distress to Waterman's paramour's young children, who witnessed officers entering their home with rifles drawn.
>
> > 1. Legal Consequences: Waterman faced prolonged legal battles based on weak evidence. He received an additional charge for resisting arrest without violence despite no active resistance or obstruction.
> > 2. Reputational Damage: The false narrative created by law enforcement painted Waterman as a danger to children based on unsubstantiated claims.

### u. The Arrest on 7/19/23:

62. On 7/19/23, Plaintiff was arrested at Samantha Warner's residence based on a probable cause affidavit signed by Defendant Alvarez dated 5/26/23. The affidavit relied entirely on claims from Agents Merkle and Holst regarding the alleged presence of Plaintiff's DNA on a firearm in the home and on unfounded assertions about "dangerous and toxic" conditions related to alleged narcotics manufacturing.

63 . Defendant Alvarez:
> 1. Failed to personally investigate or visit any of the relevant locations, including the residence where the alleged violations occurred.
> 2. Relied on unverified and false information from Agents Merkle and Holst without conducting any independent investigation.
> 3. Failed to address the contradictions between the lab results (which confirmed no psilocybin was present) and the claims in the probable cause affidavit.
> 4.

## VIIII. Causes of Action

### 64. Count I: Violation of Constitutional Rights Under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments)

**65.Defendant Alvarez violated Plaintiff's constitutional rights by:**

1. Signing a probable cause affidavit without independently investigating or verifying the claims provided by Agents Merkle and Holst.
2. Relying on demonstrably false and misleading information regarding alleged narcotics manufacturing and environmental dangers to children.
3. Failing to address or investigate exculpatory evidence, including lab results and Plaintiff's detailed rebuttal.

**66.** These actions deprived Plaintiff of his Fourth and Fourteenth Amendment rights, including protection against unlawful search and seizure and the right to due process.

**67. Count II: Negligence:** Defendant Alvarez had a duty to conduct an unbiased and thorough investigation into allegations of child neglect. She breached this duty by:

1. Failing to investigate the validity of the claims from the anonymous report and the police report authored by Agents Merkle and Holst.
2. Failing to verify the conclusions drawn by law enforcement regarding the alleged presence of psilocybin and other narcotics.
3. Neglecting to consider evidence provided by Plaintiff that contradicted the allegations.

**68.** Defendant's negligence directly contributed to Plaintiff's unlawful arrest, emotional distress, and financial harm.

**69. Count III: Abuse of Power and Coercion:** Defendant Alvarez abused her power by threatening Samantha Warner with criminal charges and loss of her children if she did not comply with demands to cease her relationship with Plaintiff. This conduct:

1. Violated Plaintiff's right to freedom of association.
2. Constituted an abuse of her position as a DCF investigator under color of law.

## X Claims for relief:

1. Emotional distress caused by excessive force during execution of the warrant.
2. Violations stemming from unreasonable seizure due to delayed action without new evidence.
3. Procedural due process violations related to arbitrary delays and trauma inflicted on innocent parties.

## XI. Relief Sought

**Plaintiff seeks the following relief:**

1. Compensatory Damages: For emotional distress, reputational harm, legal expenses, and financial losses resulting from Defendant's actions and omissions.

2. Punitive Damages: Against Defendant Alvarez for her reckless disregard of Plaintiff's rights and her abuse of power.
3. Declaratory Relief: A declaration that Defendant Alvarez violated Plaintiff's constitutional rights and acted negligently in her role.
4. Injunctive Relief: Mandating reforms within DCF to ensure proper training and oversight of investigators, including requirements for independent verification of evidence.
5. Attorney's Fees and Costs: Pursuant to 42 U.S.C. § 1988.

## XII. Jury Demand

Plaintiff demands a trial by jury on all issues so triable. Dated: December 10, 2024
Respectfully Submitted,
Brandon Waterman Pro Se

Date: 1/13/25

*Federal Claim on by Special Agent Alvarez*

*Redacted Copy*   *Page 1 of 12*

# United States District Court Southern District of Florida

Brandon Waterman, Pro Se,



**Plaintiff**

V.

Detective Lisa Alvarez PBSO Officer
Badge Number #25506 of Palm Beach County Sheriff's Office



**Defendant**
**Case No.: [To Be Assigned]**

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, NEGLIGENCE, AND OTHER FEDERAL AND STATE CLAIMS

## I. Introduction

1. This is a civil rights action brought by Plaintiff Brandon Waterman against Detective Lisa Alvarez ("Defendant"), PBSO for the Florida Department of Children and Families (DCF). Plaintiff alleges violations of his constitutional rights protected under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, actionable under 42 U.S.C. § 1983.

2. Defendant Alvarez, in signing off on the probable cause affidavit leading to Plaintiff's arrest on 7/19/23 and through her actions and inactions during the investigation beginning on 1/7/23, acted negligently, failed to independently verify claims, and engaged in intimidation and coercion tactics against Plaintiff's paramour, Samantha Warner ("Samantha"). Defendant's reliance on uncorroborated and false information provided by other officers ████████████████ her failure to conduct an adequate investigation, and her participation in coercion caused harm to Plaintiff and violated state and federal laws.



## II. Jurisdiction and Venue

3.  Jurisdiction is conferred on this Court under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction).
4.  Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Wellington, Florida (Palm Beach County), which is within the Southern District of Florida.

## III. Parties

5.  Plaintiff: Brandon ███████████████████████████████ Florida, whose rights were violated by Defendant's misconduct.

6.  Defendant: Detective Lisa Alvarez, Badge No. 25506, who at all relevant times acted under color of law in her capacity as a child protective investigator for DCF.

## IV. Factual Allegations

7.  Overview of the Initial Investigation on 1/7/23: On 1/7/23, at 3:30 AM, DCF investigators and law enforcement conducted a wellness check at Plaintiff's residence following allegations made in an anonymous report (later linked to Plaintiff's ex-girlfriend). The accusations included the manufacture of psilocybin mushrooms and environmental hazards to children. The Plaintiff's girlfriend created this DCF report to gain the upper hand in the custody of the child in common with the plaintiff. The plaintiff's active pursuit of starting a legal mushroom business was weaponized against him by his ex-girlfriend within the DCF allegations as it was insinuated that he was manufacturing psilocybin mushrooms and other psychedelics in the presence of children.
8.  During the investigation, law enforcement officers, including Agents Merkle and Holst, seized legal mycology supplies and legal oyster mushrooms, which they claimed yielded a positive result with a psilocybin field test. Subsequent lab testing on 1/18/23 confirmed there was no psilocybin present in any of the items seized. However, this information was withheld from DCF.
9.  Plaintiff's rebuttal to the allegations, including a 32-page document submitted to DCF and Defendant Alvarez (among many other individuals) which demonstrated the falsity of the claims and inconsistencies in the reports written by Agents Merkle and Holst. Despite this clearly documented proof of the contradictions regarding specifically the nature of the substances confiscated and the location that items were stored, Defendant Alvarez failed to investigate or give proper consideration to the evidence provided by Plaintiff.



## V. Delay of Arrest, Traumatic Execution of Warrant Lack of New Evidence

10. The delay in arresting Brandon Waterman for child neglect, coupled with the manner in which the arrest was executed, raises significant constitutional concerns under federal law. Below is a detailed breakdown of how these actions violated Waterman's rights and caused unnecessary trauma, forming the basis for a federal claim against Detective Lisa Alvarez under 42 U.S.C. § 1983.

### a.  Violation of Fourth and Fourteenth Amendments

11. The arrest for child neglect occurred on July 19, 2023, over six months after the initial investigation on January 7, 2023, and two months after the probable cause affidavit was signed on May 24, 2023.

12. No new evidence or findings were presented during this time to justify such a significant delay. The absence of new developments undermines the urgency and credibility of the charges.

### b.  Constitutional violations include:

13. Fourth Amendment: The delay in executing the arrest warrant raises questions about whether the probable cause was stale. Probable cause must be based on timely and reliable evidence; any significant gap between the alleged offense and the arrest risks violating protections against unreasonable seizures.

14. Fourteenth Amendment (Due Process): The prolonged delay without justification deprived Waterman of procedural fairness. Arbitrary delays can result in prejudice, such as diminished ability to gather evidence or prepare a defense.

15. The delay suggests a lack of urgency or credible danger to the children, contradicting the narrative that Waterman's environment posed an immediate threat.

16.  This inconsistency undermines Alvarez's justification for signing off on the probable cause affidavit and contributes to claims of malicious prosecution or abuse of process.

## VI. Traumatic Execution of Arrest Warrant

### c.  Excessive Force and Emotional Distress

17. On July 19, 2023, officers executed a search warrant at Waterman's new residence by breaching the door after he did not answer. They entered with rifles aimed at his

paramour's young children (ages 3 and 5), who were present while their mother was at work.

18. This militarized approach caused unnecessary trauma to the children and emotional distress to Waterman's family. The use of force was disproportionate given:The nonviolent nature of the charges (child neglect).

19. The arrest resulted in an additional charge of resisting arrest without violence, despite no evidence suggesting that Waterman posed a physical threat during this incident.

### d.  Violation of Fourth Amendment

20. The Fourth Amendment prohibits excessive force during searches and seizures. Courts evaluate excessive force claims based on whether the level of force was objectively reasonable under the circumstances.

20. In this case:Deploying at least ten officers with rifles for a nonviolent charge was excessive.

### e.  Violation of Fourteenth Amendment

21. The traumatic impact on the children may constitute a violation of their substantive due process rights under the Fourteenth Amendment. Courts have recognized that unnecessarily traumatizing children during law enforcement actions can violate their constitutional rights.

## VII. Lack of Justification for Urgency

### f.  Contradictory Actions

22. Despite treating the arrest as if it were an urgent matter requiring a heavily armed response, Waterman was released on bond for just $100 the following day. This low bond amount contradicts any claim that he posed an imminent danger to society or his family.

23. The urgency placed on executing this warrant appears inconsistent with the six-month delay in pursuing charges, further highlighting procedural irregularities.

24. Alvarez's role in approving or facilitating this approach demonstrates negligence or deliberate indifference to its traumatic impact on innocent parties (the children) and its disproportionality to the charges.

25. This conduct supports claims that Alvarez violated federal standards for reasonable law enforcement practices.

### g. Fourth Amendment: Unreasonable Seizure

26. The delay in execution of the warrant without new evidence raises questions about whether probable cause remained valid at the time of arrest.

27. The militarized execution of the warrant constitutes excessive force disproportionate to the charges.

### h. Fourteenth Amendment: Due Process Violations

28. Arbitrary delays in criminal proceedings deprived Waterman of procedural fairness, causing undue emotional distress and reputational harm.

29. The traumatic impact on his paramour's children during execution violated their substantive due process rights by subjecting them to unnecessary harm.

### i. Malicious Prosecution

30. Alvarez's reliance on stale evidence and misrepresentations in her probable cause affidavit could support claims that she acted with malice or reckless disregard for Waterman's rights.

## VII. Legal Precedents Supporting Federal Claims

31. **Excessive Force**: In *Graham v. Connor* (490 U.S. 386, 1989), the Supreme Court held that law enforcement's use of force must be objectively reasonable based on circumstances.Deploying rifles in front of young children for nonviolent charges likely fails this test.

32. **Due Process**: In *County of Sacramento v. Lewis* (523 U.S. 833, 1998), substantive due process protects individuals from egregious government conduct that "shocks the conscience."Traumatizing young children during an unnecessarily aggressive raid could meet this standard.

*page 6 of 12*

**33. Malicious Prosecution:** In *Albright v. Oliver* (510 U.S. 266, 1994), malicious prosecution claims require showing that criminal proceedings were initiated without probable cause and with malice.Alvarez's reliance on misrepresented evidence and unjustified delays strengthens this argument.

**34. Lisa Alvarez's role in delaying Brandon Waterman's arrest without justification, combined with her approval (or complicity) in executing an unnecessarily aggressive warrant raid, demonstrates clear violations of constitutional rights under both the Fourth and Fourteenth Amendments.** These actions caused undue harm to Waterman, his paramour's young children, and their family unit while undermining public trust in law enforcement practices.

## VIII. Irrelevance of the Firearm to Child Neglect Charge

**35.** The discovery of a firearm during the investigation into Brandon Waterman is irrelevant to the child neglect charges for several reasons. The circumstances surrounding its discovery, its location, and the lack of any connection to child endangerment undermine its use as probable cause for the arrest. Additionally, the manner in which the firearm was obtained raises significant legal and procedural concerns.

### j.  Location of the Firearm and Lack of Danger to Children

**36.** The firearm was located in a high closet on a top shelf over six feet above ground, making it inaccessible to children aged 3 and 5. Its placement eliminates any immediate or foreseeable risk to the children's safety.

**37.** There is no evidence that the children had knowledge of or access to the firearm. Without such evidence, its mere presence in the home cannot be linked to child neglect under Florida Statute §827.03.

38. The police report and probable cause affidavit fail to establish how this firearm endangered the children or contributed to an unsafe environment.

### k.  Irrelevance to Child Neglect Charges

38. Child Neglect Defined: Under Florida law, child neglect requires proof that a caregiver knowingly exposed a child to harm or danger that could reasonably result in physical or mental injury. The presence of a firearm, legally or illegally possessed, does not inherently meet this standard unless it can be shown that children were directly endangered by it.

39. In this case:The firearm was stored in a location inaccessible to children.

### l.   Coerced Consent and Illegal Search

40. The firearm was discovered during a warrantless search conducted without proper consent until four hours into the search. Consent was obtained under duress, as law enforcement allegedly threatened Waterman and his paramour with consequences (e.g., removal of children) if they did not comply.

41. The search extended for six hours and included personal spaces (drawers, closets) unrelated to the stated purpose of ensuring child safety. This overreach violated Fourth Amendment protections against unreasonable searches and seizures.

42. Without exigent circumstances (e.g., immediate danger to children), law enforcement had no legal basis to search areas like a high closet shelf where no immediate threat could exist.

### m.  Use of Firearm as Probable Cause for Arrest

43. Despite its irrelevance to child safety, the firearm was used as the sole basis for probable cause in Waterman's arrest for child neglect. This is an inappropriate application of the law because:The discovery of the firearm does not demonstrate neglect or endangerment under §827.03.

### n.   Delay in Arrest Undermines Credibility

44. If law enforcement genuinely believed that the presence of the firearm posed an imminent danger to children, they would have acted immediately upon its discovery on January 7, 2023. Instead:The arrest did not occur until July 19, 2023—

45. The delayed arrest further highlights how law enforcement misused the discovery of the firearm as an afterthought rather than addressing any legitimate concern for child welfare.

### o.   Misuse of Law and Procedural Violations

46. **Misapplication of Child Neglect Statute:**By using the presence of a firearm as probable cause for child neglect charges, law enforcement stretched the statute beyond its intended purpose.

Page 8 of 12

47. Florida Statute §827.03 focuses on protecting children from actual harm or imminent danger—not speculative risks based on unrelated factors like Waterman's felony status.

### p. Procedural Overreach

48. Law enforcement exceeded their authority by conducting an overextended search under coerced consent, violating Fourth Amendment protections.

49. Their actions demonstrate a misuse of power aimed at building a case against Waterman rather than addressing immediate concerns about child safety.

### q. Broader Implications

50. The inclusion of the firearm as evidence for child neglect reflects a pattern of overreach and misrepresentation:

51. It diverts attention from legitimate concerns about child welfare by focusing on unrelated issues (e.g., Waterman's past felony conviction).

52. It undermines public trust in law enforcement by appearing punitive rather than protective.

53. This misuse of evidence could form part of a federal claim under 42 U.S.C. §1983, alleging violations of constitutional rights:

54. **Fourth Amendment:** Unreasonable search and seizure due to coerced consent and lack of exigent circumstances.

55. **Fourteenth Amendment:** Due process violations stemming from arbitrary delays and misuse of irrelevant evidence.

56. The discovery of a firearm during an illegal search is irrelevant to allegations of child neglect because it does not meet statutory requirements for endangerment under Florida law. Its location—on a high shelf inaccessible to children—further negates any claim that it posed a direct threat. Law enforcement's reliance on this evidence reflects procedural overreach, misapplication of statutes, and potential constitutional violations, all of which undermine the legitimacy of Waterman's arrest and charges.

57. This claim highlights systemic failures by law enforcement and underscores Alvarez's accountability for her role in these constitutional violations.

### r. Misrepresentation of Chemistry Reports

58. The probable cause affidavit relied heavily on flawed interpretations of laboratory findings to justify both the original child neglect charges and subsequent law enforcement actions:

**a. Alleged DMT Discovery:** The chemistry report stated that a brown liquid substance found in a glass bottle in the garage was "tentatively identified" as DMT using Gas Chromatography-Mass Spectrometry (GC-MS). However:

1. The report explicitly noted that "confirmatory testing has not been performed on tentatively identified drugs," meaning there was no definitive proof that the liquid contained DMT.
2. The gross weight of 712 grams included the weight of the bottle itself, inflating the perceived quantity and misrepresenting its significance.
3. No purity analysis or specific concentration of DMT was provided, yet law enforcement exaggerated its presence as if it were a confirmed and highly potent substance.

**b. Mushroom Material Testing:** Field tests allegedly indicated psilocybin in confiscated mushrooms; however:

1. Laboratory analysis later confirmed that no controlled substances were detected in any tested samples.
2. Claims that there was "not enough material" to test contradict the documented confiscation of 513 grams of mushroom material—an amount sufficient for confirmatory testing.
3. Despite these findings, law enforcement continued to allege that Waterman was manufacturing psilocybin mushrooms, creating a false narrative unsupported by scientific evidence.

**c. Mischaracterization of Legal Mycology Materials:** Materials used for cultivating oyster mushrooms—legal and non-toxic—were misrepresented as "dangerous chemicals" or "toxins." These items pose no health risks and are commonly used in legal mycology practices.

**d.** Law enforcement conflated legal mushroom cultivation with illegal drug manufacturing without any evidence to support this claim.

### s. Systemic Failures in Judicial Oversight

**59**. The search warrant executed on July 19, 2023, was approved despite glaring inconsistencies in the evidence presented in prior reports. Judges failed to critically evaluate whether probable cause still existed months after laboratory results had exonerated Waterman on key allegations.



10|12

60. The issuance of this warrant so long after the investigation concluded suggests systemic bias or negligence within both law enforcement and judicial processes.

**t. Harm Caused by Misrepresented Evidence**

61. The reliance on flawed chemistry reports and exaggerated claims caused significant harm:

a. Emotional Trauma: The militarized raid caused unnecessary distress to Waterman's paramour's young children, who witnessed officers entering their home with rifles drawn.

1. Legal Consequences: Waterman faced prolonged legal battles based on weak evidence. He received an additional charge for resisting arrest without violence despite no active resistance or obstruction.
2. Reputational Damage: The false narrative created by law enforcement painted Waterman as a danger to children based on unsubstantiated claims.

**u. The Arrest on 7/19/23:**

62. On 7/19/23, Plaintiff was arrested at Samantha Warner's residence based on a probable cause affidavit signed by Defendant Alvarez dated 5/26/23. The affidavit relied entirely on claims from Agents Merkle and Holst regarding the alleged presence of Plaintiff's DNA on a firearm in the home and on unfounded assertions about "dangerous and toxic" conditions related to alleged narcotics manufacturing.

63 . **Defendant Alvarez:**

1. Failed to personally investigate or visit any of the relevant locations, including the residence where the alleged violations occurred.
2. Relied on unverified and false information from Agents Merkle and Holst without conducting any independent investigation.
3. Failed to address the contradictions between the lab results (which confirmed no psilocybin was present) and the claims in the probable cause affidavit.
4.

# VIIII. Causes of Action

**64. Count I: Violation of Constitutional Rights Under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments)**

**65.Defendant Alvarez violated Plaintiff's constitutional rights by:**

1. Signing a probable cause affidavit without independently investigating or verifying the claims provided by Agents Merkle and Holst.
2. Relying on demonstrably false and misleading information regarding alleged narcotics manufacturing and environmental dangers to children.
3. Failing to address or investigate exculpatory evidence, including lab results and Plaintiff's detailed rebuttal.

**66.** These actions deprived Plaintiff of his Fourth and Fourteenth Amendment rights, including protection against unlawful search and seizure and the right to due process.

**67. Count II: Negligence:** Defendant Alvarez had a duty to conduct an unbiased and thorough investigation into allegations of child neglect. She breached this duty by:

1. Failing to investigate the validity of the claims from the anonymous report and the police report authored by Agents Merkle and Holst.
2. Failing to verify the conclusions drawn by law enforcement regarding the alleged presence of psilocybin and other narcotics.
3. Neglecting to consider evidence provided by Plaintiff that contradicted the allegations.

**68.** Defendant's negligence directly contributed to Plaintiff's unlawful arrest, emotional distress, and financial harm.

**69. Count III: Abuse of Power and Coercion:**Defendant Alvarez abused her power by threatening Samantha Warner with criminal charges and loss of her children if she did not comply with demands to cease her relationship with Plaintiff. This conduct:

1. Violated Plaintiff's right to freedom of association.
2. Constituted an abuse of her position as a DCF investigator under color of law.

## X Claims for relief:

1. Emotional distress caused by excessive force during execution of the warrant.
2. Violations stemming from unreasonable seizure due to delayed action without new evidence.
3. Procedural due process violations related to arbitrary delays and trauma inflicted on innocent parties.

## XI. Relief Sought

**Plaintiff seeks the following relief:**

1. Compensatory Damages: For emotional distress, reputational harm, legal expenses, and financial losses resulting from Defendant's actions and omissions.

2. Punitive Damages: Against Defendant Alvarez for her reckless disregard of Plaintiff's rights and her abuse of power.
3. Declaratory Relief: A declaration that Defendant Alvarez violated Plaintiff's constitutional rights and acted negligently in her role.
4. Injunctive Relief: Mandating reforms within DCF to ensure proper training and oversight of investigators, including requirements for independent verification of evidence.
5. Attorney's Fees and Costs: Pursuant to 42 U.S.C. § 1988.

## XII. Jury Demand

Plaintiff demands a trial by jury on all issues so triable.
Respectfully Submitted,
Brandon Waterman Pro Se
X: _____
Date: 1/12/25